**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 15-cv-00644-WJM-NYW

DARRELL FORTNER,

      Plaintiff,

v.

COUNTY OF EL PASO, COLORADO,
STATE OF COLORADO,
BLACK FOREST FIRE/RESCUE PROTECTION DISTRICT,
EL PASO COUNTY BOARD OF COUNTY COMMISSIONERS,
TERRY MAKETA,
SCOTT CAMPBELL,
BOB HARVEY,
JAMES REBITSKI,
EDWAN BRACKEN,
RICK MCMORRAN,
DIANA MAY,
PRESTON COOPER,
DENNIS HASLEY,
PEGGY LITTLETON,
SALLIE CLARK,
AMY LATHEN
DARREL GLENN,
AMY FOLSOM,
ANDREW GORGEY,
JON MUELLER,
MICHAEL SHELBURNE, and
JOHN HICKENLOOPER,
In their official and individual capacities,

      Defendants.

---

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

---

Magistrate Judge Nina Y. Wang

      This civil action comes before the court on the following motions:

1. Defendants the County of El Paso, Colorado, El Paso County Board of County Commissioners, Terry Maketa, Scott Campbell, Diana May, Dennis Hisey,[1] Peggy Littleton, Sallie Clark, Amy Lathen, Daryl Glenn, Amy Folsom, Andrew Gorgey, Michael Shelburne, and Jon Mueller's (collectively, "County Defendants") Motion to Dismiss "First Amended Verified Civil Rights Complaint 42 USCS 1983" ("County Motion to Dismiss") [#31, filed May 7, 2015];

2. Defendants Black Forest Fire/Rescue Protection District (the "District"), Bob Harvey, Edward Bracken, Rick McMorran, and Preston Cooper's (collectively, "BFPD Defendants") Motion to Dismiss ("BFPD Motion to Dismiss")[2] [#32, filed May 8, 2015]; and

3. Defendants the State of Colorado[3] (the "State") and Governor John Hickenlooper's (collectively, "State Defendants") Motion to Dismiss First Amended Complaint ("State Motion to Dismiss") [#34, filed May 12, 2015].

---

[1] Defendant Dennis Hisey was incorrectly named in the caption as "Dennis Hasley." [#31 at 3].

[2] Defendant Edward Bracken was incorrectly named in the caption as "Edwan." [#32 at 1]. In addition, it appears that Plaintiff has not filed a Return of Service for Defendant Rebitski, but the BFPD contends, without entering an appearance on his behalf, that the arguments set forth in their Motion to Dismiss would apply equally to Defendant Rebitski had he been served. [*Id.* at 1 n.1]. The court takes judicial notice of its own docket that more than 120 days have elapsed since the filing of this Complaint against Defendant Rebitski. Therefore, concurrently with this Recommendation, this court has issued an Order to Show Cause as to why Defendant Rebitski should not be dismissed for lack of proper service pursuant to Rule 4(m) of the Federal Rules of Civil Procedure and why the legal analysis as set forth this Recommendation should not apply to Defendant Rebitski..

[3] Plaintiff identified Defendant Scott Campbell as "County or State employee," but cites Colo. Rev. Stat. §§ 30-10-512, 513, which indicate that he is a county employee [#34 at 3 n.1] and the County Defendants include Defendant Campbell in their Motion to Dismiss. *See* [#31].

2

These matters were referred to this Magistrate Judge pursuant to the Order Referring Case dated May 22, 2015 [#44] and the memorandum dated the same day [#45].  After carefully considering the Motions and related briefing, the entire case file, and the applicable case law, I respectfully RECOMMEND that all three Motions to Dismiss be GRANTED.

## BACKGROUND

Mr. Fortner, a *pro se* litigant,[4] filed this lawsuit on March 30, 2015, pursuant to 42 U.S.C. § 1983, asserting numerous constitutional violations and state law claims sounding in tort arising out of events related to the Black Forest fire that occurred in El Paso County, Colorado in 2013 (the "Fire").  [#1].[5]  Each group of Defendants immediately filed Motions to Dismiss, which were mooted upon the filing of the First Amended Complaint on April 28, 2015.  [#7]; *see* [#5, #6, #8].  The First Amended Complaint contains the following claims for relief against all Defendants: (1) "Gross Negligence, Outrageous Conduct, Deliberate Indifference;" (2) "Gross Negligence/Respondeat Superior, Failure to Train Employees;" (3) "Violation of the First, Fifth, and Fourteenth Amendments to the United States Constitution, Due Process, Equal Protection, Equal Employment Opportunity;" and (4) "Deliberate Indifference and Gross Negligence."  [#7 at 10-19].  At a high level, Plaintiff alleges that Defendants knew that conditions existed under which the Fire could occur, failed to act reasonably to prevent the Fire, and thereafter failed to

---

[4] Although proceeding *pro se*, Mr. Fortner is no stranger to civil litigation or the courts in this district.  Mr. Fortner has been a named plaintiff in no less than filed eight civil proceedings dating back to 1994.  *See Fortner v. Torres*, 94-cv-01385-DBS; *Fortner v. Moffat*, 94-cv-01386-DBS; *Fortner v. City of Colorado Springs*, 94-cv-1579-RPM-BDP; *Fortner v. City of Colorado Springs*, 96-cv-01794-LTB; *Fortner v. Young*, 06-cv-02148-NYW-MEH; *Fortner v. Cartier*, 07-cv-01675-LTB-KMT; *Fortner v. State of Colorado*, 14-cv-02297-BNB.

[5] Mr. Fortner originally named his co-plaintiffs as Does 1-500, whom he voluntarily dismissed on April 28, 2015.  [#8].

act reasonably to contain the Fire. [#7].  In addition, the County Defendants allegedly failed to protect Plaintiff's property, resulting in the loss of his home, four German Shepherds and four cats, and $300,000 worth of equipment used in his tree service business; and the County Defendants, along with the State Defendants, failed to request, or later appeal, the denial of assistance from the Federal Emergency Management Agency ("FEMA"). [*Id.* at 4, 17]   Plaintiff further alleges that the BFPD Defendants improperly investigated the cause of the Fire, improperly investigated Mr. Fortner along with other victims of the Black Forest fire, misused public funds, and then concealed their findings. [*Id.* at 14]. Finally, Plaintiff alleges that Defendant Shelburne, El Paso County Sheriff pointed a gun at Plaintiff on his property [*id.* at ¶ 32]; El Paso County Commissioners rejected his bid for a burned tree removal contract [*id.* at ¶ 35]; and Defendant Mueller, El Paso County Sheriff's Deputy, along with Defendants May, Folsom, and Gorgey, El Paso County Attorneys, altered and falsified court documents [*id.* at ¶ 34].   Mr. Fortner seeks unspecified compensatory damages, punitive damages, a variety of declaratory relief, and injunctive relief in the form of an investigation by the State of Defendants May, Folsom, Gorgey, and Mueller "for possible criminal fraud and conspiracy." [*Id.* at 20].

This court set a Scheduling Conference to be held May 28, 2015.  [#10].  In the interim, Plaintiff filed returns of service for all named Defendants other than James Rebitski, who would have been subject to the BFPD Motion to Dismiss had he been properly served. *See* [#32 at 1 n.1].[6]  On May 7, 2015, Defendants filed an Unopposed Joint Motion to Stay Disclosures and Discovery and Request to Vacate Scheduling Conference on the basis that each group of

---

[6] The BFPD Defendants argue that Plaintiff improperly served Mr. Harvey, Mr. Bracken, Mr. McMorran, and Mr. Cooper pursuant to Fed. R. Civ. P. 4, but nonetheless filed the BFPD Motion to Dismiss on behalf of these individuals.  [#32 at 1 n.1].

Defendants intended to file motions to dismiss to assert qualified immunity, immunity pursuant to the Colorado Governmental Immunity Act ("CGIA"), Colo. Rev. Stat. § 24-10-101, *et seq.* and, with respect to the State, Eleventh Amendment immunity. [#30]. This court granted that motion on May 12, 2015 and vacated the Scheduling Conference. [#33].

On May 7, 2015, the County Defendants filed their Motion to Dismiss [#31]. In the County Defendants' Motion to Dismiss, they argue that dismissal of the First Amended Complaint is appropriate because it fails to comply with the pleading standards of Rule 8 [#31 at 5]; the court lacks subject matter jurisdiction based on qualified immunity; the court lacks subject matter jurisdiction based on immunity under the CGIA; Plaintiff has failed to exhaust administrative remedies [*id.* at 5-10]; and the First Amended Complaint fails to state a cognizable claim because the claims are time-barred, have been released, or are not cognizable as pled [*id.* at 10-13].

The following day, the BFPD Defendants filed their Motion to Dismiss [#32]. In their Motion to Dismiss, the BFPD Defendants contend that Plaintiff failed to plead a cognizable claim either under Rule 8 or under Rule 12(b)(6). Specifically, the BFPD Defendants contend that Plaintiff's averments fail to provide them with sufficient notice of the basis of the claims being asserted against them, fail to state a cognizable constitutional claim, and fail because there is an insufficient basis to discern personal participation by each respective BFPD Defendant in the alleged constitutional violation. The individual Defendants also assert they are immune from state law claims under CGIA. [#32].

On May 12, 2015, the State Defendants filed their Motion to Dismiss. [#34]. The State Defendants contend that any claims against the State and Governor Hickenlooper are barred by

the Eleventh Amendment; that neither the State nor Governor Hickenlooper in his official capacity can be a "person" for the purposes of 42 U.S.C. § 1983; and that the First Amended Complaint fails to state a discernible claim that can lie against any particular state actor. [*Id.* at 1-11]. The State Defendants further contend that Plaintiff lacks standing to sue Governor Hickenlooper over any failure to appeal the denial of FEMA funds, any state tort action is barred by CGIA, and there is no private right of action for Plaintiff to make challenges of the type he is attempting to assert. [*Id.* at 11-17]. The State Defendants argue that Governor Hickenlooper, to the extent he is sued in his personal capacity, is entitled to qualified immunity. [*Id.* at 12]. Finally, the State Defendants contend that Plaintiff has failed to set forth the requisite facts to establish willful and wonton conduct on the part of any State employee, and in any case, the State cannot be responsible for any such conduct. [*Id.* at 17-18].

On May 20, 2015, Plaintiff filed Responses to each Motion; each Response is substantially similar to the others. [#39, #37, #38]. In construing each Response liberally, the court interprets Plaintiff to argue that any immunity due to Defendants was waived when Defendants violated his constitutional rights, *see e.g.,* [#37 at ¶ 14]; the Defendants have waived any personal jurisdiction or service argument by their actions in this case [*id.* at ¶¶15-17]; the court must accept all facts pled as true [*id.* at ¶ 17]; the Plaintiff's constitutional rights were violated when he was not permitted to speak at a public meeting [*id* at ¶ 22-23]; and Defendants must have known and had personal participation in the violation of his due process and equal protection rights by failing to adequately prepare for a fire that was foreseeable [*id.* at ¶ 27]. Attached to Mr. Fortner's Responses are exhibits that reflect, among other things, a "Notice of

Claim," an excerpt of the proposed Scheduling Order in this matter, and media coverage of the Black Forest Fire and its aftermath.

County Defendants filed a Reply on May 22, 2015 [#43]; the State Defendants filed a Reply on May 27, 2015 [#47]; and the BFPD Defendants filed a Reply on June 3, 2015 [#49]. On May 22, 2015, Plaintiff filed a Supplement to his Response to the BFPD Motion ("Supplemental Response") to Dismiss [#46], which this court struck on June 2, 2015 for failure to first obtain leave of court and meet and confer with Defendants pursuant to D.C.COLO.LCivR 7.1(a). Plaintiff has not sought leave to file his Supplemental Response as a sur-reply or otherwise, and accordingly, the court does not consider any statements or arguments made therein.

**STANDARD OF REVIEW**

**I.      Fed. R. Civ. P. 12(b)(1)**

The Defendants in this case invoke various immunities in arguing that this court is divested of subject matter jurisdiction over certain claims made by Plaintiff. Federal courts, as courts of limited jurisdiction, must have a statutory basis for their jurisdiction. *See Morris v. City of Hobart*, 39 F.3d 1105, 1111 (10th Cir. 1994) (citing *Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994). Pursuant to Federal Rule of Civil Procedure 12(b)(1), the court may dismiss a complaint for lack of subject matter jurisdiction. The determination of a court's jurisdiction over subject matter is a question of law. *Madsen v. United States ex. U.S. Army, Corps of Engineers*, 841 F.2d 1011, 1012 (10th Cir. 1987). "A court lacking jurisdiction cannot render judgment but must dismiss the cause *at any stage* of the proceedings in which it becomes

apparent that jurisdiction is lacking." *Basso v. Utah Power & Light Co.,* 495 F.2d 906, 909 (10th

Cir. 1974).

## II.      Fed. R. Civ. P. 12(b)(6)

In addition, Defendants argue that Plaintiff fails to state a cognizable claim against the

respective Defendant groups.  Under Rule 12(b)(6), a court may dismiss a complaint for "failure

to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In deciding a

motion under Rule 12(b)(6), the court must "accept as true all well-pleaded factual allegations …

and view these allegations in the light most favorable to the plaintiff."  *Casanova v. Ulibarri*,

595 F.3d 1120, 1124 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th

Cir. 2009)).  However, a plaintiff may not rely on mere labels or conclusions, "and a formulaic

recitation of the elements of a cause of action will not do."  *Bell Atlantic Corp. v. Twombly*, 550

U.S. 544, 555 (2007).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 129 S.

Ct. 1937, 1949 (2009).  Plausibility refers "to the scope of the allegations in a complaint: if they

are so general that they encompass a wide swath of conduct, much of it innocent, then the

plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'"  *Robbins

v. Oklahoma,* 519 F.3d 1242, 1247 (10th Cir. 2008) (citation omitted).  "The burden is on the

plaintiff to frame 'a complaint with enough factual matter (taken as true) to suggest' that he or

she is entitled to relief."  *Id.*  The ultimate duty of the court is to "determine whether the

complaint sufficiently alleges facts supporting all the elements necessary to establish an

entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

Because Mr. Fortner is appearing *pro se*, the court "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States Govt*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted). However, a court may not assume that a plaintiff can prove facts that he has not alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *See Gallagher v. Shelton*, 587 F.3d 1063, 1067 (10th Cir. 2009) ("[Court's] role is not to act as [*pro se* litigant's] advocate"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) ("the court will not construct arguments or theories for the plaintiff in the absence of any discussion of those issues") (internal citation omitted).

### III.    Fed. R. Civ. P. 8(a)

Rule 8(a) provides that a complaint "must contain (1) a short and plain statement of the grounds for the court's jurisdiction, . . . (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought." The dual purposes of a complaint are to give the opposing parties fair notice of the basis for the claims against them so that they may respond, and to allow the court to conclude that the allegations, if proven, show that the plaintiff is entitled to relief. *See Monument Builders of Greater Kansas City, Inc. v. American Cemetery Ass'n of Kansas*, 891 F.2d 1473, 1480 (10th Cir. 1989). The tenet of Rule 8(a) is reinforced by Rule 8(d)(1), which provides that "[e]ach allegation must be simple, concise, and direct." Prolix, vague, or unintelligible pleadings violate Rule 8. *See Buhendwa v. Regional Transp. Dist.*, 82 F. Supp. 3d 1259, 1270 (D. Colo. 2015).

**ANALYSIS**

Mr. Fortner has sued Defendants in their individual and official capacities. [#7 at ¶ 9]. Because the court cannot proceed on any claim over which it does not exercise subject matter jurisdiction, I must first consider, with respect to each of the pending Motions to Dismiss, whether the respective Defendant groups assert various immunities that preclude jurisdiction. Then the court will turn to the various arguments regarding the sufficiency of Mr. Fortner's First Amended Complaint.

**I.     Applicable Law**

**A.     Asserted Immunities**

Title 42 U.S.C. § 1983 allows an injured person to seek damages for the violation of his or her federal rights against a person acting under color of state law. *See* 42 U.S.C. § 1983; *see also West v. Atkins,* 487 U.S. 42, 48 (1988). To assert a claim under section 1983, Plaintiff must show (1) that he had a right secured by the Constitution and laws of the United States that was violated (2) by a person who acted under color of state law. *Hall v. Witteman,* 584 F.3d 859, 864 (10th Cir. 2009). Although private parties may be held liable in certain circumstances, "a plaintiff must show…that the individual's conduct is 'fairly attributable to the State'" before a claim can be stated against him or her. *Pino v. Higgs,* 75 F.3d 1461, 1465 (10th Cir. 1996) (quoting *Lugar v. Edmondson Oil Co., Inc.,* 457 U.S. 922, 937 (1982)). Furthermore, "[a] defendant cannot be liable under § 1983 unless personally involved in the deprivation." *Olsen v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993) (citation omitted). The complaint must allege an affirmative link between the alleged constitutional violation and the specific individual's

participation in that violation.  *Stidham v. Peace Officer Standards and Training,* 265 F.3d 1144, 1156-57 (10th Cir. 2001).

### 1.    Individual Liability:  Qualified Immunity

Each of the Defendants sued in her or his individual capacity contends that she or he is entitled to qualified immunity.  [#31 at 5-6; #32 at 5-6; #34 at 12].  The doctrine of qualified immunity "shields government officials performing discretionary functions from individual liability under 42 U.S.C. § 1983 unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known."  *DeSpain v. Uphoff*, 264 F.3d 965, 971 (10th Cir. 2001) (quoting *Baptiste v. J.C. Penney Co.*, 147 F.3d 1252, 1255 (10th Cir. 1998) (internal quotation marks omitted).  Qualified immunity is an affirmative defense to § 1983 liability (*see Adkins v. Rodriguez*, 59 F.3d 1034, 1036 (10th Cir. 1995)); once a defendant asserts the defense, the plaintiff must demonstrate that qualified immunity is not proper by showing that "(1) the defendant's conduct violated a constitutional right and (2) the law governing the conduct was clearly established at the time of the alleged violation."  *DeSpain*, 264 F.3d at 971 (quoting *Baptiste*, 147 F.3d at 1255).

### 2.    Official Capacity:  Colorado Governmental Immunity Act

This court may exercise supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a).  In this case, however, all of the Defendant groups assert that the CGIA bars any state law tort claims against them, either as public employees or as entities.[7]  [#31 at 8-9; #32 at 8-9; #34 at 14-15].  The CGIA bars actions in tort against public employees and

---

[7] It is well-settled that "[a]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."  *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (citing *Brandon v. Holt*, 469 U.S. 464, 471–72, (1985)).

entities, subject to certain provisions waiving immunity. *Medina v. State,* 35 P.3d 443, 453 (Colo. 2001). The CGIA provides:

> [a] public employee shall be immune from liability in any claim for injury ... which lies in tort or could lie in tort regardless of whether that may be the type of action or the form of relief chosen by a claimant and which arises out of an act or omission of such employee occurring during the performance of his duties and within the scope of his employment unless the act or omission causing injury was willful and wanton...

C.R.S.A. § 24-10-118(2)(a). The CGIA covers "all the circumstances under which the state, any of its political subdivisions, or the public employees of such public entities may be liable in actions which lie in tort." Colo. Rev. Stat. § 24-10-102. The term "public entity" is defined as "the state, county, city and county, municipality, school district ... and every other kind of district, agency, instrumentality, or political subdivision thereof organized pursuant to law." *Id.* at § 103(5). "Public employee" is defined as "an officer, employee, servant, or authorized volunteer of the public entity." *Id.* at § 103(4). "Governmental immunity raises a jurisdictional issue." *Springer v. City & County of Denver,* 13 P.3d 794, 798 (Colo. 2000).

### 3.    Official Capacity:  Eleventh Amendment Immunity

In their Motion to Dismiss, the State Defendants argue that the State of Colorado and Governor Hickenlooper, in his official capacity, are entitled to Eleventh Amendment immunity. [#34 at 4-5]. The Eleventh Amendment bars suits against a state by its own citizens, and generally immunizes state defendants sued in their official capacities from liability for damages or equitable relief. *See Johns v. Stuart*, 57 F.3d 1544, 1552 (10th Cir. 1995). In addition, state employees acting in their official capacities are not "persons" subject to suit under § 1983. *Duncan v. Gunter*, 15 F.3d 989, 991 (10th Cir. 1994). An exception to this general bar is a suit in which a plaintiff seeks to prospectively enjoin a state official from violating federal law.

*Johns*, 57 F.3d at 1552.  In addition, as discussed above, an official-capacity suit is, for all intents and purposes, to be treated as a suit against the entity.

### B.      Statute of Limitations

Under Colorado law, "[a]ll actions against sheriffs, coroners, police officers, firefighters, national guardsmen, or any other law enforcement authority" must be commenced within one year after the cause of action accrues "regardless of theory upon which suit is brought."  Colo. Rev. Stat. § 13-80-103(1)(c).  *Cf. Moore v. Town of Erie,* No. 12–cv–02497–CMA–MJW, 2013 WL 3786646, *5 (D. Colo. July 19, 2013) (stating that statute of limitations under § 13–80–103(1)(c), C.R.S., for actions against a police officer is one year).

## II.      County Defendants' Motion to Dismiss

From this court's liberal interpretation of the First Amended Complaint, it appears that Mr. Fortner alleges the County Defendants were negligent in managing the Fire; that Defendant Shelburne pointed a gun at Plaintiff on Plaintiff's property; that El Paso County Commissioners rejected Plaintiff's bid for a burned tree removal contract; and Defendants May, Folsom, Mueller and Gorgey altered and falsified court documents.

### A.      Proper Defendants

As an initial matter, County Defendants argue that "County of El Paso, Colorado" is duplicative because Plaintiff has named the El Paso County Board of County Commissioners as well as each individual Commissioner.  [#31 at 2].  Section 30-11-105 requires that all proceedings against a Colorado county be brought against "the board of county commissioners" of that county.  Colo. Rev. Stat. § 30-11-105.  Defendants Darryl Glenn, Amy Lathen, Sallie Clark, Dennis Hisey, and Peggy Littleton comprise the El Paso County Board of County

Commissioners.[8]  Furthermore, as noted above, a suit against a government official in his or her

capacity is simply "another way of pleading an action against an entity of which an officer is an

agent."  *McDonald v. Wise*, 769 F.3d 1202, 1215 (10th Cir. 2014) (quoting *Monell v. Dep't of*

*Social Servs.,* 436 U.S. 658, 690 n. 55 (1978)).  *See also Lopez v. LeMaster*, 172 F.3d 756, 762

(10th Cir.1999) (Claims against a board of county commissioners or an individual board member

in his or her official capacity are claims against the county itself).

Accordingly, I respectfully RECOMMEND that the County of El Paso, as well as

Defendants Glenn, Lathen, Clark, Hisey, and Littleton in their respective official capacities, be

dismissed as defendants as duplicative.

### B.   Constitutional Claims

Plaintiff styles his Third Claim for Relief as "Violation of the First, Fifth, and Fourteenth

Amendments to the United States Constitution, Due Process, Equal Protection, Equal

Employment Opportunity."  [#7 at 14].  First, despite how Plaintiff styles this claim, he asserts

no facts that could support a violation of the Equal Protection Clause of the Fourteenth

Amendment, which provides, in pertinent part, "nor shall any state deny to any person within its

jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1.  This clause

invalidates dissimilar treatment for similarly-situated persons unless there is a rational basis for

the difference in treatment.  *See Warrington v. Board of County Commissioners of Mineral*

*County*, 4 F. Supp. 3d 1243, 1246-47 (D. Colo. 2013).  It is not, however, a "generic guard

against arbitrary or unlawful governmental action."  *See SECSYS, LLC v. Vigil*, 666 F.3d 678,

---

[8]  *See* El Paso County Colorado Board of County Commissioners, *Your Commissioners*, http://bcc.elpasoco.com/Pages/default.aspx.  The court may take judicial notice of the contents of an agency's website.  *See e.g.*, *Coleman v. Dretke*, 409 F.3d 665, 667 (5th Cir. 2005) (taking judicial notice of Texas agency's website).

684 (10th Cir. 2012).   In this case, Plaintiff identifies no group to which he belongs that was treated differently than any other group [#7].   *Id.* at 685 (observing that "[f]irst, we ask whether the challenged state action intentionally discriminates between groups of persons.").   Instead, he seems to identify a group of individuals with whom he was allegedly equally mistreated. [#7 at ¶ 22].   Nor does Plaintiff plead any facts to support a conclusion that the state's actions cannot be supported by some "upright governmental purpose."   *Id.* at 686.   Plaintiff also does not assert sufficient facts to support a "class of one" Equal Protection violation, *i.e.*, he does not allege facts that he was intentionally treated different from others similarly situated.   *Id.* at 686-89. Indeed, Mr. Fortner originally filed a Complaint not only on his own behalf, but on behalf of Does 1-500—suggesting that he was not treated differently than those similarly situated. [#1, #7 at ¶ 22].

Similarly, Plaintiff fails to assert any facts to demonstrate that he was discriminated against "with respect to his compensation, terms, conditions, or privileges of employment, because of [his] race, color, religion, sex, or national origin" that could invoke any "Equal Employment Opportunity" protections.   *Harris v. Forklift Sys, Inc.*, 510 U.S. 17, 21 (1993) (citing 42 U.S.C. § 2000e–2(a)(1)).   While Mr. Fortner alleges that Defendants' actions resulted in the trucks and equipment he used for his tree service [#7 at ¶ 150] and the "County's employees' refusal to accept Darrell Fortner, Dundee Tree Service's bid, Mr. Fortner suffered losses in the amount of $4,000,000" [*id.* at ¶ 119] resulting in "violation of Plaintiff, Darrell Fortner's Equal Employment Opportunity," [*id.* at ¶ 118], nothing in the First Amended Complaint even suggests that such a decision was made by any Defendant's improper

consideration of his race, color, religion, sex, or national origin. [#7]. Indeed, nothing in the First Amended Complaint identifies Mr. Fortner's inclusion in any protected class. [*Id.*]

Nor has Plaintiff asserted any allegations as to County Defendants that would implicate the First Amendment's protections regarding free speech and against retaliation. *See Becker v Kroll*, 494 F.3d 904, 925 (10th Cir. 2007) (a plaintiff must plead and prove (1) participation in a constitutionally protected activity; (2) that a defendant's action caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that a defendant's action was substantially motivated as a response to his exercise of his First Amendment speech rights) (citation omitted). The First Amended Complaint alleges that Defendant Brecken, Cooper, and McMorran individually violated Plaintiff's First Amended Right to speak at a public hearing. [#7 at ¶ 108]. Those Defendants are not County Defendants, but rather are part of the BFPD Defendant group. *See* [#32 at 1].

As best this court can discern, Plaintiff asserts that his right to due process was violated as follows: County Defendants, including Defendant Maketa, El Paso County Sheriff and Fire Warden [#7 at ¶ 41] and Defendant Campbell, Deputy Fire Marshal, failed to properly manage the Fire or protect Plaintiff's property [#7 at ¶¶ 113-115]; County Defendants Commissioners Hisley, Littleton, Clark, Lathen, and Glenn rejected Plaintiff's bid for a tree removal contract [*id.* at ¶ 116]; Defendant Shelburne pointed his service weapon at Plaintiff on Plaintiff's property [*id.* at ¶¶ 120-121]; Defendants Mueller and Gorgey falsified documents for use as exhibits in federal court [*id.* at ¶¶ 122-123]; and Defendants Mueller, May, and Folsom "fabricated four El Paso County Municipal Court filed Court Cases." [*Id.* at ¶ 124]. These allegations, construed liberally, have placed County Defendants on notice of the basis for the due process claim. The

operative question therefore, is whether these allegations, if proven, show that Plaintiff is entitled to relief and therefore, permit Mr. Fortner's claims against the County Defendants to survive dismissal at this juncture.

The Fourteenth Amendment prohibits any State from depriving a person of life, liberty, or property without due process of law.  U.S. Const. amend. XIV, § 1.  Due process claims under the Fourteenth Amendment can take the form of a procedural or substantive violation: "procedural due process ensures the state will not deprive a party of property without engaging in fair procedures to reach a decision, while substantive due process ensures the state will not deprive a party of property for an arbitrary reason."  *Hyde Park Co. v. Santa Fe City Council*, 226 F.3d 1207, 1210 (10th Cir. 2000).  In his First Amended Complaint, Mr. Fortner does not identify whether he is asserting one or the other, or both.  County Defendants do not address this question, and argue only that Plaintiff has failed to establish any clearly established right.

To state a due process claim under § 1983, a plaintiff must show "(1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States."  *Parratt v. Taylor,* 451 U.S. 527 (1981), *overruled on other grounds by Daniels v. Williams,* 474 U.S. 327 (1986)).  In evaluating a procedural due process claim, a court must consider "whether the deprivation, if one be found, was visited upon the plaintiff without due process of law."  *Hillside Community Church v. Olson,* 58 P.3d 1021, 1025 (Colo. 2002) (citing *Fusco v. Connecticut,* 815 F.2d 201, 205 (2d Cir. 1987)).  As to substantive due process, certain government actions are barred "regardless of the fairness of the procedures used to implement them."  *County of Sacramento v. Lewis,* 523 U.S. 833, 840 (1998) (quoting *Wolff v.*

*McDonnell,* 418 U.S. 539, 558 (1974)).  "When an alleged constitutional violation is denial of substantive or procedural due process, the Plaintiff must identify the specific right of which he or she was deprived." *Lowman v. City of Aurora,* No. 10–cv–01259–MSK–MJW, 2012 WL 1269131, at *2 (D. Colo. April 16, 2012).

This court proceeds with an analysis of Plaintiff's due process claim, notwithstanding the finding below that Plaintiff's claims are time barred as to County Defendants Maketa, Campbell, Shelburne, and Mueller.   Assuming for the purposes of this Recommendation that County Defendants were acting under the color of state law, the initial question is whether Mr. Fortner has stated a protected property interest.  I find he has not.  A property interest is more than "an abstract need or desire," or a "unilateral expectation."  *Board of Regents v. Roth,* 408 U.S. 564, 577 (1972).  Plaintiff offers no support for finding he has a protected property interest in how County Defendants managed the Fire,[9] in receiving the tree removal contract purportedly worth $4,000,000 [#7 at ¶¶ 118-119],[10] or in standing on his property without Defendant Sheriff Shelburne drawing and pointing his gun in Plaintiff's direction.[11]  In addition, even if this court

---

[9] *See Shortino v. Wheeler*, 531 F.2d 938 (7th Cir. 1976) (affirming that plaintiff had no constitutionally protected interest in having home and business protected from fire even where municipality undertook to provide fire protection).

[10] *See Southern Disposal, Inc. v. Texas Waste Management, a Div. of Waste Management of Texas, Inc.*, 161 F.3d 1259, 1265 (10th Cir. 1998) (holding that when a governmental entity seeks competitive bids on a project, it does "not thereby create a protected property interest or a 'legitimate claim of entitlement' in the bidders") (quoting *Roth*, 408 U.S. at 577).

[11] This court notes the bare-bones nature of this allegation.  Plaintiff does not allege that the gun was loaded, that Defendant Shelburne was menacing or threatened to shoot, or that the alleged unholstering was unprovoked. *Cf. Hawkins v. Holloway*, 316 F.3d 777, 786-87 (8th Cir. 2003) (Finding genuine issue of material fact existed regarding threats of deadly force where plaintiffs presented evidence that "the sheriff pointed loaded weapons at them at close range, often pointing to their genitals, and made direct and forceful threats to kill them or cause grievous bodily injury…[and] that the sheriff was agitated during the incidents, that his finger was on the

assumed that Plaintiff has a protected interest that was violated by Defendants Mueller and Gorgey's alleged falsification of documents in federal court or Defendants Mueller, May, and Folsom's alleged fabrication of documents in municipal court, Mr. Fortner does not allege that any deprivation occurred as a result of these actions or explain why the process provided under state and federal rules of civil procedure is insufficient to address those issues. *See, e.g.,* Fed. R. Civ. P. 60(b); C.R.C.P. 60(b).

Substantive due process protection is accorded primarily to fundamental interests "relating to marriage, family, procreation, and the right to bodily integrity." *Williams v. Berney*, 519 F.3d 1216 (10th Cir. 2008) (quoting *Albright v. Oliver*, 510 U.S. 266, 272 (1994)). None of these interests are implicated by Plaintiff's allegations. Furthermore, he has not described the procedure to which he was entitled or how Defendants deprived him of any such process. *Cf. Moore v. Board of County Comm'rs of County of Leavenworth*, 507 F.3d 1257, 1259 (10th Cir. 2007) (affirming that even if deceased volunteer firefighter, who died when a deputy collided with his vehicle while both were responding to emergency call, had a protected liberty interest in his life and a constitutionally protected property interest in county's compliance with policy restricting speed of emergency vehicles, he had no right to predeprivation hearing to protect those interests). *See also Zinermon v. Burch,* 494 U.S. 113, 125 (1990) ("In procedural due process claims, the deprivation by state action of a constitutionally protected interest…is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*.") The "fundamental requirements of due process are notice and an opportunity

---

trigger, and that they perceived his threats to be real," and affirming that "an official's threat to employ deadly force for no legitimate reason rises to a substantive due process violation.").

to present reasons why 'a proposed action should not be taken.'" *Santana v. City of Tulsa*, 359 F.3d 1241, 1244 (10th Cir. 2004) (quoting *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 546 (1985)).  While Mr. Fortner is entitled to a less stringent review of his pleadings, "the Court cannot take on the responsibility of serving as the litigant's attorney in constructing arguments," *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005), and a court should not "conjure up unpleaded facts that might turn a frivolous claim…into a substantial one." *Robbins*, 519 F.3d at 1252.

Finally, to the extent Plaintiff alleges that "Defendants, State, County, and BFPD's custom and policies was [sic] the legal proximate cause of damages and losses to the plaintiff," [#7 at ¶ 129], municipalities cannot be held liable under § 1983 for the actions of others under the theory of *respondeat superior.  Simmons v. Uintah Health Care Special Dist.,* 506 F.3d 1281, 1284 (10th Cir. 2007) (citing *Monell v. Dep't of Social Services of the City of New York*, 436 U.S. 658, 694 (1978) (holding a municipality may be found liable under § 1983 when it violates constitutional rights via an official policy or custom)).  "To establish municipal liability, a plaintiff must show (1) the existence of a municipal custom or policy and (2) a direct and causal link between the custom or policy and the violation alleged." *Jenkins v. Wood*, 81 F.3d 988, 993 (10th Cir. 1996) ("More specifically, if the inaction theory rests on an alleged failure to train, the plaintiff must prove 'the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need' for additional training") (quoting *City of Canton v. Harris,* 489 U.S. 378, 390 (1989)).  Or, the plaintiff may allege the constitutional violations were rendered by the actions of final policymakers, "whose conduct can

be no less described as the 'official policy' of a municipality." *Simmons*, 506 F.3d at 1285.  In his First Amended Complaint, Plaintiff includes a history of various fires suffered by Colorado dating from 1994 to 2013 [#7 at ¶ 63]; but he identifies no express policy or established practice, does not allege that any of the individual County Defendants are policymakers, and generally fails to draw any connection between past fires and the named Defendants.  Additionally, he does not attribute any deliberate conduct on the part of the County that resulted in the deprivation of constitutional rights.  *See Board of County Comm'rs v. Brown*, 520 U.S. 397, 404 (1997).

Because I conclude that Plaintiff has failed to state a cognizable constitutional right, I respectfully RECOMMEND that the Third Claim be dismissed against the County Defendants in their individual capacities based on Plaintiff's failure to plead sufficient facts to overcome the County Defendants' invocation of qualified immunity.   In addition, I respectfully RECOMMEND that Third Claim be dismissed against all County Defendants, including the BOCC and any Defendants in their official capacity, for failure to state a cognizable constitutional claim.

### C.    State Law Tort Claims

As an initial matter, while the court may exercise supplemental jurisdiction over state law claims in any case in which it exercises original jurisdiction,"[w]hen all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims." *Koch v. City of Del City*, 660 F.3d 1228, 1248 (10th Cir.2011) (quoting *Smith v. City of Enid ex rel. Enid City Comm'n*, 149 F.3d 1151, 1156 (10th Cir.1998)).  Based on the findings above that Plaintiff has not stated a claim for a constitutional violation, I respectfully recommend that this court decline to exercise jurisdiction over Plaintiff's remaining state law

claims. However, should the court consider these claims, I find that they too are subject to dismissal for the following reasons.

Plaintiff alleges in support of his First Claim for "Gross Negligence, Outrageous Conduct, Deliberate Indifference" that County Defendants "failed to keep radio dispatch lines available for incoming reports of the fire and failed to have any alternative dedicated mechanism for reporting the Fires"; "failed to timely, adequately, and reasonably respond to the Fires"; "failed to timely, adequately, and reasonably suppress the Fires"; and "unreasonably delayed the containment and suppression of the Fires." [#7 at ¶¶ 76, 77]. Plaintiff also alleges that on June 11, 2013, Defendant Campbell "ignited more than two (2) control burns in Black Forest, Colorado," and "allowed these control burns to get out of control." [*Id.* at ¶ 77]. In his Second Claim for "Gross Negligence/Respondeat Superior," Plaintiff alleges that the County Defendants failed to properly train or supervise their employees in containing and suppressing fires; that Defendant Maketa failed to reasonably respond to the Fire; and that these failures are the proximate cause of Plaintiff's damages resulting from the Fire. [*Id.* at ¶¶ 87-104]. Finally, in his Fourth Claim for "Deliberate Indifference and Gross Negligence," Plaintiff alleges that the County Defendants "owed a duty of reasonable care to the [Fire] victims," took no action to eliminate the risk of the Fire despite knowing that the area had undergone an extreme drought; "failed to…reasonably respond to the needs of the [Fire] victims"; failed to request assistance from FEMA; concealed the findings of the Fire investigation; failed to evacuate Plaintiff's family pets during the Fire or otherwise prevent the property loss that Plaintiff suffered. [*Id.* at ¶¶ 134-137, 143, 146-150].

The County Defendants assert that they were each public employees at the times relevant to the allegations [#31 at 9 citing Colo. Rev. Stat. § 24-10-103(4)(a)], which Plaintiff does not dispute, and argue that they are immune from liability for any of these claims under CGIA. I agree with Defendants that Plaintiff's First, Second, and Fourth Claims sound in tort, and are thus subject to the CGIA. *See Casey v. Colorado Higher Educ. Ins. Benefits Alliance Trust*, 310 P.3d 196, 201 (Colo. App. 2012) ("[t]he essential difference between a tort obligation and a contract obligation is the source of the parties' duties. Contract obligations arise from promises made between parties. Tort obligations generally arise from duties imposed by law, and tortious conduct is a breach of a duty imposed by law, not by contract.") (citation omitted). *See also Robinson v. Colorado State Lottery Div.*, 179 P.3d 998, 1003 (Colo. 2008) ("[w]hen the injury arises either out of conduct that is tortious in nature or out of the breach of a duty recognized in tort law, and when the relief seeks to compensate the plaintiff for that injury, the claim likely lies in tort or could lie in tort for purposes of the CGIA."). Therefore, the County Defendants are immune from tort liability in their official capacity, barring allegations of willful and wanton behavior.[12] *See* Colo. Rev. Stat. § 24-10-118(1). *But see Middleton v. Hartman,* 45 P.3d 721, 728 (Colo. 2002) ("the state is not liable for its employees' willful and wanton conduct."); *Gray*

---

[12] Section 24-10-106.1 provides for partial waiver of immunity for claims against the state arising from prescribed fire. Colo. Rev. Stat. § 24-10-106.1. Plaintiff argues this provision applies as to Defendant Campbell, *see* [#38 at 4]; and pleads that Defendant Campbell "is an employee of the County or the State representing the State under Code Section 30-10-512 and 30-10-513 C.R.S." [#7 at ¶ 43]. Neither of these statutes supports that Campbell as Deputy Fire Marshal appointed by Defendant Maketa was an employee of the State. In any case, the claims against Campbell arising from the Fire are time-barred. Additionally, the partial waiver applies only to a "prescribed fire," which is defined as "the application of fire in accordance with a written prescription for vegetative fuels and excludes a controlled agricultural burn." Colo. Rev. Stat. § 24-10-103(3.5). Plaintiff does not allege that the controlled burn allegedly ignited by Defendant Campbell [*id.* at ¶113] was in furtherance of a written prescription for vegetative fuels, and thus his pleading does not implicate section 24-10-106.1.

*v. University of Colorado Hosp. Authority*, 284 P.3d 191, 197 (Colo. App. 2012) ("the sovereign immunity of public entities is not waived if their employees' acts or omissions are willful and wanton.").

### D.    Other Bases for Dismissal

While this court finds that it lacks subject matter jurisdiction over all of Plaintiff's state law claims as pled in the First Amended Complaint, that Plaintiff has failed to articulate sufficient facts to state any cognizable claim, and that this court should decline to exercise supplemental jurisdiction over any remaining state law claim, as a matter of completeness for this Recommendation, this court briefly considers the County Defendants' other arguments in favor of dismissal.

### 1.    Individual Capacity-State Law Claims

As noted above, the CGIA waives sovereign immunity for claims involving willful and wonton conduct.  A plaintiff may demonstrate willful and wanton conduct under the CGIA by establishing that the defendants "purposefully pursued a course of action or inaction that [they] considered would probably result in the harm" to him.  *Castaldo v. Stone,* 192 F. Supp. 2d 1124, 1141 (D. Colo. 2001).   Mr. Fortner's general and conclusory statement that "Defendants, State, County, and BFPDs' acts and or omissions were willful and wanton," [#7 at ¶ 81], does not suffice.  *See* Colo. Rev. Stat. § 24-10-110(5)(a)-(b) (instructing that "[i]n any action in which allegations are made that an act or omission of a public employee was willful and wanton, the specific factual basis of such allegations shall be stated in the complaint [and] [f]ailure to plead the factual basis of an allegation that an act or omission of a public employee was willful and

wanton shall result in dismissal of the claim for failure to state a claim upon which relief can be granted."). *See also Castaldo*, 192 F. Supp. 2d at 1138-39.

Plaintiff identifies only Defendant Maketa, "the Fire Warden," and Defendant Campbell, "the Fire Marshal" [#7 at ¶ 76], by name—neither of whom are County Defendants. The associated allegations arising from the Black Forest Fire, described above, are general and conclusory in nature and fail to specify any individual action by a County Defendant. [*See, e.g.,* #7 at ¶¶ 77, 94]. Colorado does not "recognize stratification by degrees of negligence"; and thus, its courts do not differentiate between "gross negligence" and simple "negligence." *Dukeminier v. K-Mart Corp.*, 651 F. Supp. 1322, 1323 (D. Colo. 1987). A plaintiff alleging negligence must establish "the existence of a duty, a breach of that duty, causation, and damages." *Redden v. SCI Colo. Funeral Servs., Inc.*, 38 P.3d 75, 80 (Colo. 2001) (citation omitted). Mr. Fortner has simply not pled these components. The tort of extreme and outrageous conduct has three elements: (1) the defendant engaged in extreme and outrageous conduct; (2) the defendant engaged in such conduct recklessly or with the intent of causing plaintiff severe emotional distress; and (3) the defendant's conduct caused plaintiff to suffer severe emotional distress. *Culpepper v. Pearl St. Bldg., Inc.,* 877 P.2d 877, 882 (Colo. 1994) (citing the Restatement (Second) of Torts § 46 (1965)). Mr. Fortner has similarly failed to plead these components.

### 2.      Statute of Limitations

In addition, the County Defendants contend that certain statutes of limitations bar Mr. Fortner's claim.  Statutes of limitations for Colorado state claims are generally considered non-jurisdictional.  *See Nowakowski v. District Court In & For Denver County*, 664 P.2d 709, 711 (Colo. 1983) ("A civil statute of limitations … is not jurisdictional.").

*Claims Against Sheriffs and Firefighters.*   Under Colorado law, "[a]ll actions against sheriffs, coroners, police officers, firefighters, national guardsmen, or any other law enforcement authority" must be commenced within one year after the cause of action accrues "regardless of theory upon which suit is brought."  Colo. Rev. Stat. § 13-80-103(1)(c).  *Cf. Moore v. Town of Erie,* No. 12–cv–02497–CMA–MJW, 2013 WL 3786646, *5 (D. Colo. July 19, 2013) (stating that statute of limitations under § 13–80–103(1)(c), C.R.S., for actions against a police officer is one year).  Plaintiff identifies Defendant Shelburne as El Paso County Sheriff [*id.* at ¶ 32], and Defendant Mueller as El Paso County Sheriff's Deputy [*id.* at ¶ 33].  As the events underlying the First Amended Complaint occurred in 2013, *see e.g.*, [#7 at ¶ 54], and Plaintiff did not initiate this lawsuit until March 2015, this statute applies as a time-bar to the claims asserted against Defendants Shelburne and Mueller.

*Claim for False and Fabricated Documents.*   Plaintiff alleges that the "false and fabricated documents" were filed in Civil Action No. 06-cv-02148-NYW-MEH (the "2006 Action") at "Doc. 241," [#7 at ¶¶ 69, 70], indicating that those claims are time-barred.  The court refers to Colorado statute of limitations to define the limitations period for § 1983 claims.  *See, e.g., Hardin v. Straub,* 490 U.S. 536, 539 (1989).  Colorado law provides a two-year statute of limitations for actions brought pursuant to § 1983.  *See* Colo. Rev. Stat. § 13–80–102(g).  *See*

*also Blake v. Dickason*, 997 F.2d 749, 750 (10th Cir. 1993) (applying § 13–80–102 to § 1983 claim). The filing that Plaintiff refers to as "Doc. 241" was entered on the docket in the 2006 Action on September 17, 2008. *See Fortner v. City of Colorado Springs*, No. 06-cv-02148-NYW-MEH, [ECF No. 241]. There is nothing in the First Amended Complaint to suggest that Mr. Fortner did not know or should not have known that ECF No. 241 was false or fabricated at the time of filing. Therefore, the statute of limitations has expired for any claims related to the filing of alleged false documents submitted as ECF No. 241.[13]

Based on the forgoing, I decline to reach County Defendants' additional argument regarding Plaintiff's failure to comply with CGIA notice requirements and to exhaust administrative remedies related to El Paso County's procurement process[14] and I RECOMMEND that the County Motion to Dismiss be GRANTED.

---

[13] County Defendants also argue that Plaintiff "released and settled" all claims related to falsified documents as to Defendants May, Folsom, Gorgey, and Mueller during the course of the 2006 Matter, subject to Magistrate Judge Boland's Order Enforcing Settlement Agreement. [#31 at 11-12 (citing Exhibit C to Motion to Dismiss [#31-3])]. This court's review of Judge Boland's Order suggests that such claims were released as to at least Defendant Maketa and James A. Choate, but because this court finds that the claims are otherwise time-barred, it does not recommend dismissal based on the settlement.

[14] The County Defendants also argue that "Plaintiff failed to comply with the stringent notice requirements under the CGIA" [#31 at 9], but do not otherwise articulate a basis for dismissal on the grounds of failure to comply with CGIA notice requirements. In addition, the County Defendants assert that Mr. Fortner failed to exhaust his administrative remedies with respect to any bid for a tree removal contract. [#31 at 9-10; #43 at 3]. Plaintiff avers that he "did exhaust the administrative remedies the County Defendants made available to him." [#7 at ¶ 117]. In construing Plaintiff's First Amended Complaint liberally, this court declines to recommend dismissal based on lack of exhaustion at this time, given the fact that it has already recommended dismissal based on an alternative bases and the exhaustion arguments as presented may be better suited for summary judgment.

### III.     BFPD Defendants

The BFPD Defendants separately move to dismiss Plaintiff's First Amended Complaint. Plaintiff asserts that Defendant Harvey is the BFPD Fire Chief [#7 at ¶¶ 44, 76], and Defendants Bracken, McMorran, and Cooper "were employees of the [BFPD]."   [#7 at ¶ 46].   Defendants assert that Bracken and Cooper are former BFPD board members and McMorran is a current BFPD board member.   [#32 at 5-6].   Plaintiff identifies Defendant Maketa as El Paso County Sheriff and Fire Warden [#7 at ¶ 41], Defendant Campbell as Deputy Fire Marshal [*id* at ¶ 42], and Defendant Harvey as "the Fire Chief of [BFPD]" [*id.* at ¶ 44].

### A.     Constitutional Claims

Plaintiff asserts the following allegations as to the BFPD Defendants in his Third Claim for Relief: Defendants Bracken, Cooper, and McMorran "refused to allow anyone to speak" at a public hearing held shortly after June 11, 2013, and "physically forced [Plaintiff] out of the building" [#7 at ¶ 107]; Defendant McMorran "called the El Paso County Sheriff and had the Sheriff investigate [Plaintiff] without due process" [*id.* at ¶ 109]; Defendants Bracken, Cooper, and McMorran "unreasonably concealed the findings of the investigation of the [Fire] from the general public" [*id.* at ¶ 110];   Defendants Bracken, Cooper, and McMorran "individually misused public funds of more than $200,000.00 investigating the [Fire]" [*id.* at ¶ 111]; and that Defendant Harvey protected the home of his co-worker "without regard to the plaintiff's home." [*Id.* at ¶ 114].

BFPD Defendants generally argue that Plaintiff has not stated a claim for any constitutional violation because the allegations "fail to make clear which claim is brought against which defendant or what the basis for each legal claim is."   [#32 at 5].   They then state that the

one claim "that is apparent from these allegations [is] a First Amendment free speech claim premised on the alleged actions of the District's board members in refusing to allow Plaintiff to speak at a meeting." *Id.*  With respect to a First Amendment violation, Defendants argue that any such claim fails for lack of specificity and note that Plaintiff "does not state what meeting he was at, on what date the meeting took place, at what location the meeting took place, or what each individual specifically did to prevent him from speaking." *Id.*  Indeed, Plaintiff does not specify the message Defendants prevented him from voicing, which would indicate to the court whether his comments are afforded protection under the Constitution, and he asserts that Defendants Bracken, Cooper, and McMorran "refused to allow anyone to speak," not just the Plaintiff. [#7 at ¶ 107]. *Cf. Farnsworth v. City of Mulvane, Kan.*, 660 F. Supp. 2d 1217, 1224-28 (D. Kan. 2009) (finding city's discriminatory enforcement of rules governing discussion during city council meeting violated attendee's free speech rights).  This court agrees that Mr. Fortner has not nudged a First Amendment claim "across the line from conceivable to plausible." *Robbins v. Oklahoma,* 519 F.3d at 1247.

For the reasons set forth above, to the extent Plaintiff intends to assert a due process or equal protection claim, he has also not identified a constitutionally protected interest of which the BPFD Defendants deprived him, nor has he pled sufficient facts to "demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Jimenez v. Martz*, No. 11–cv–00948–PAB–CBS, 2012 WL 976034, at *6 (D. Colo. Feb. 23, 2012) (stating standard for asserting a prima facie equal protection claim) (citation omitted).

Furthermore, the District is a special district created by state law and can take action only by majority vote of a quorum of board members.[15]   *See* Colo. Rev. Stat. § 32-1-301; *Krupp v. Breckenridge Sanitation Dist.*, 1 P.3d 178, 183-84 (Colo. App. 1999).   Although courts within this circuit have not yet passed on whether and in what circumstances a board member can bind a Special District, courts in other circuits have concluded that no municipal liability can lie for the "isolated acts of only one member of a multi-member board."   *See, e.g., Wragg v. Vill. of Thornton*, 604 F.3d 464, 469 (7th Cir. 2010)  (citing *Mason v. Vill. of El Portal,* 240 F.3d 1337, 1340 (11th Cir. 2001)).  I see no reason to find otherwise here.

Accordingly, I conclude that Plaintiff has failed to state a cognizable constitutional right in his Third Claim.   Therefore, I respectfully RECOMMEND that Third Claim be dismissed against the BFPD Defendants in their individual capacities based on Plaintiff's failure to plead sufficient facts to overcome the BFPD Defendants' invocation of qualified immunity.   In addition, I respectfully RECOMMEND that the Third Claim be dismissed against all BFPD Defendants for failure to state a cognizable constitutional claim.

**B.      State Law Claims**

As noted above, "[w]hen all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims."  *Koch*, 660 F.3d at 1248.  I respectfully recommend that the court decline to exercise jurisdiction over the state law claims asserted as to the BFPD Defendants.  However, should the court decide to exercise

---

[15] Although BFPD Defendants do not actually state that BFPD is a special district, this court is satisfied that its status is such.  *See generally In re Black Forest Fire/Rescue Protection Dist.*, 85 P.3d 591 (Colo. App. 2003).

supplemental jurisdiction, I recommend dismissal of the claims against the BFPD Defendants for the reasons described below.

As support for his First Claim for "Gross Negligence, Outrageous Conduct, Deliberate Indifference," Plaintiff alleges that Defendant Harvey "owed a duty of reasonable care to the general public, including the plaintiff," and "unreasonably delayed the containment and suppression of the Fires."  [#7 at ¶¶ 76, 77].  Plaintiff further asserts that the District's "failure to train their employees was a legal proximate cause of damages to the plaintiff."  [#7 at ¶ 79].  As support for his Second Claim for "Gross Negligence, Respondeat Superior," Plaintiff alleges generally that "BFPD's superiors failed to properly train their employees in containing and suppressing fires [and] failed to properly supervise their subordinates."   [#7 at ¶¶ 87, 88]. Plaintiff further alleges Defendant Harvey misused his authority and failed to reasonably respond to the Fire.  [#7 at ¶¶ 90, 94, 98].  As support for his Fourth Claim for "Deliberate Indifference and Gross Negligence," Plaintiff alleges that "BFPD through [Defendants] Bracken, Cooper, and McMorran…misused public funds…when hiring a private investigating group…and a private attorney to investigate the [Fire]."  [#7 at ¶ 144].  Plaintiff further alleges that these Defendants "unreasonably conceal[ed] the findings of…the investigation [into the Fire] from the general public."  [#7 at ¶ 145].

Plaintiff does not dispute that the BFPD Defendants are public employees, and does not allege that any of these Defendants acted willfully or wantonly.  Therefore, for the reasons stated above, I find that the BFPD Defendants are immune from tort liability under the CGIA as set forth in Plaintiff's First, Second, and Fourth Claims.

**C.      Other Bases for Dismissal**

**1.      Individual Capacity-State Law Claims**

For the same reasons as stated above, this court finds that Plaintiff has not pled a cognizable claim as to BFPD Defendants in their individual capacities.  In his First and Second Claims, Plaintiff references only Defendant Harvey by name for his alleged improper management of the Fire.  [#7 at ¶ 77, 90, 94, 98, 102].  Yet Plaintiff identifies no specific facts to support such claim, or set forth an adequate basis that Defendant Harvey's actions were willful and wonton as to waive sovereign immunity under the CGIA.  In his Fourth Claim, Plaintiff alleges that Defendants Bracken, Cooper, and McMorran "officially and individually misused public funds" for an investigation of the Fire, and concealed the findings of that investigation from the public.  [#7 at ¶¶ 144, 145].  However, these allegations are entirely conclusory in nature and lack any factual support.  Moreover, a claim  for outrageous conduct requires a showing of actions "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Llewellyn v. Shearson Financial Network, Inc.*, 622 F. Supp. 2d 1062, 1070 (D. Colo. 2009) (citation omitted).  I find that Mr. Fortner has not framed a complaint "with enough factual matter (taken as true) to suggest" that he is entitled to relief on his claims for individual liability of BFPD Defendants.  *Robbins*, 519 F.3d at 1247.

### 2.      Statute of Limitations

As discussed above, Colo. Rev. Stat. § 13-80-103(1)(c) requires all actions against firefighters to be filed within one year of the accrual of such action.   Mr. Fortner's First Amended Complaint is based on events occurring in 2013.   Accordingly, claims asserted against Defendants Maketa, Campbell, and Harvey are time-barred, and the First Amended Complaint contains no allegations to suggest otherwise.

Therefore, this court respectfully RECOMMENDS that the BFPD Motion to Dismiss be GRANTED.

## IV.   State Defendants

Mr. Fortner alleges throughout the First Amended Complaint that the "state," without further specificity, is responsible for mismanaging the Fire in the following ways: failure to have proper fire-fighting equipment [#7 at ¶ 59]; failure to properly maintain dispatch lines [*id.* at ¶ 77]; failure to properly train and supervise its employees [*id.* at ¶¶ 87, 88]; failure to protect Plaintiff [*id.* at ¶ 115]; and failure to "eliminate the risk" posed by drought conditions [*id.* at ¶ 137].  Plaintiff also alleges that Governor Hickenlooper failed to file an appeal of the denial by federal officials of a disaster declaration with respect to the Fire, and failed to assist victims of the Fire.  [*Id.* at ¶¶ 140, 143].  Plaintiff names no other individual state employee.  In   addressing these allegations, I draw primarily on the analysis presented above.

First, Eleventh Amendment immunity serves to bar any claims for damages Plaintiff asserts against the State and Governor Hickenlooper in his official capacity.  *See Johns*, 57 F.3d at 1552.  In addition, any claims Plaintiff asserts pursuant to § 1983 are likewise barred as to the State and Governor Hickenlooper acting in his official capacity because neither is a "person"

subject to suit.  *Duncan*, 15 F.3d at 991.  Because a plaintiff may seek prospective injunctive relief, and because Mr. Fortner, in a liberal reading of his Request for Relief, appears to demand "State and County customs and policies be reconsidered and amended" and "the Attorney General to investigate Diana May, Amy Folsom, Andrew Gorgey, and Jon Mueller for possible criminal fraud and conspiracy," this court now turns to see whether any substantive claim can support Mr. Fortner's demand for prospective injunctive relief.  A review of Plaintiff's First Amended Complaint demonstrates that Plaintiff does not set forth facts that support a cognizable claim—constitutional or otherwise—under either Rule 12(b)(6) or Rule 8(a).

### A.    Constitutional Violations

First, Plaintiff's generic use of "state" to assert conclusory allegations such as a failure to properly respond to the Fire, maintain the Fire, or protect Plaintiff's property from the Fire is impermissible and runs afoul of Rule 8.  *See Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011) (instructing that the plaintiff must "make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state") (citation omitted).

Second, Mr. Fortner does not allege that Governor Hickenlooper personally participated in any constitutional violation, and does not plead a cognizable constitutional violation against Governor Hickenlooper in his individual capacity.

Third, the State as an entity can be liable for a constitutional violation only through its policies and practices or through a policymaker.  Plaintiff fails to allege the presence of any of these as the driving force behind the asserted constitutional violations.

Therefore, this court concludes that Plaintiff's First Amended Complaint does not set forth a cognizable constitutional violation..

### B.    State Law Tort Claims

In addition, should the court exercise supplemental jurisdiction, the CGIA applies to the State Defendants with respect to Plaintiff's First, Second, and Fourth Claims that sound in tort, as there are no allegations of willful and wanton conduct, and accordingly, no waiver of the sovereign immunity extended by the CGIA.

### C.    Other Bases for Dismissal

The State Defendants also raise standing as a basis for dismissal as to the allegation that Governor Hickenlooper improperly failed to appeal federal officials' decision regarding the emergency status of the Fire. But Plaintiff's pleadings do not clearly establish his standing to contest the Governor's decision. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (requiring a showing that the plaintiff suffered an injury in fact, the injury is "fairly traceable" to the defendant's complained of action, and a favorable judgment will likely redress the injury). Indeed, there is no identification of a statutory basis for a private right of action. The party invoking federal jurisdiction bears the burden of establishing the elements of standing. *Id.* at 561. "Where 'the independent action of some third party not before the court'—rather than that of the defendant—was the direct cause of the plaintiff's harm, causation may be lacking." *Habecker v. Town of Estes Park*, 518 F.3d 1217, 1225 (10th Cir. 2008) (quoting *Simon v. E. Ky. Welfare Rights Org.,* 426 U.S. 26, 41-42 (1976)).

As this court understands Plaintiff's pleading, his injuries resulted from the Fire, rather than from subsequent events; and it is not clear how the court could award any type of

prospective injunctive relief that could serve to redress the alleged injury (noting as well that Plaintiff has not asked for any such relief). *Cf. Habecker*, 518 F.3d at 1224-25 (affirming plaintiff lacked standing where, despite suffering injury in fact from losing public, elected position, he could not demonstrate the injury was caused by the alleged actions of the defendants, and that it would be redressed through the requested relief). Plaintiff does not allege that Governor Hickenlooper had or has any authority to require the federal authorities to change their position on the emergency status of the Black Forest Fire, or that any meaningful relief could be afforded now, years after the fire. Accordingly, this court concludes that Plaintiff has failed to carry his burden of establishing standing as to any claim based on Governor Hickenlooper's failure to reasonably request assistance, or appeal the denial of assistance, from the Federal Emergency Management Agency. [#7 at 17].

For the reasons set forth above, I respectfully RECOMMEND that the State Motion to Dismiss be GRANTED.

## CONCLUSION

For the foregoing reasons, this court respectfully **RECOMMENDS** that:

1. The County Motion to Dismiss [#31] be **GRANTED**;

2. The BFPD Motion to Dismiss [#32] be **GRANTED**; and

3. The State Motion to Dismiss [#34] be **GRANTED**.[16]

---

[16] Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the

DATED: December 9, 2015                    BY THE COURT:


                                           s/Nina Y. Wang
                                           United States Magistrate Judge

---

district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).